# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lake MacLeod Homeowners, : 
Association, Inc., Jonathan Iams, : 
John and Sujata Donahue, AJ and : 
Deanna Jugan, Don and Alycia : 
Lamparski, Sherwood and Shawna : 
Johnson, Jim and Joyce Hensler, : 
Jason and Danielle Grilli, Gregory : 
and Lora Rich, Adan and Jodi Kanter, : 
Matthew Lydic, Sandeep and Shaifali : 
Sharma, Stephanie Novosel, Todd and : 
Donna White, Richard and Melinda : No. 1247 C.D. 2017
Hoyland, Vince Lattari and Rebeccah : Argued: February 6, 2018
Hoffman, Neil and Nicole Walker, : 
Michael Duckworth and Tracy Howe, : 
Jeff and Allison Romano, Doug and : 
Diane Murray, : 
                   Appellants : 
                    : 
        v. : 
                    : 
Pine Township Board of Supervisors : 
Cavalier Land Partners, LP : 

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**         **FILED: March 12, 2018**

       This appeal concerns a large, complex development and raises technical compliance issues. In particular, the Lake MacLeod Homeowners Association and

numerous individual landowners[1] (collectively, Objectors) challenge an order of the Court of Common Pleas of Allegheny County (trial court) that affirmed decisions of the Pine Township Board of Supervisors (Supervisors) granting Cavalier Land Partners, LP's (Applicant) applications seeking zoning and land development approvals for its proposed mixed residential use development. Primarily at issue in this appeal is the Supervisors' decision to grant Applicant's requests for waivers from certain requirements set forth in the Township of Pine Zoning Ordinance (zoning ordinance) and the Township of Pine Subdivision and Land Development Regulations (SALDO). Because we agree with Objectors that the Supervisors erred in granting waivers from the zoning ordinance and the SALDO, we reverse.

## I. Background

In March 2016, Applicant submitted an application and plan for preliminary subdivision and land development approval (Plan). Specifically, Applicant proposes to construct a 244-lot mixed residential use development,[2] (known as Laurel Grove) on two parcels consisting of approximately 85 acres located near Warrendale Road and Babcock Boulevard in Wexford (subject property). Additionally, Applicant sought several waivers, one from the zoning

---

[1] The individual landowners are Jonathan Iams, John and Sujata Donahue, AJ and Deanna Jugan, Don and Alycia Lamparski, Sherwood and Shawna Johnson, Jim and Joyce Hensler, Jason and Danielle Grilli, Gregory and Lora Rich, Adan and Jodi Kanter, Matthew Lydic, Sandeep and Shaifali Sharma, Stephanie Novosel, Todd and Donna White, Richard and Melinda Hoyland, Vince Lattari and Rebeccah Hoffman, Neil and Nicole Walker, Michael Duckworth and Tracy Howe, Jeff and Allison Romano, and Doug and Diane Murray.

[2] The proposed mixed-use development consists of patio homes, single-family homes, and townhomes.

2

ordinance, two from the SALDO, and one from the Township of Pine Grading, Excavating and Fill, and Retaining Wall Ordinance (excavation and fill ordinance).

Applicant also filed a conditional use application seeking approval to construct "patio homes"[3] as part of its proposed residential development, which are permitted by conditional use in Pine Township's (Township) R-3 Neighborhood Residence District, in which the subject property lies.[4]

In May 2016, the Township Planning Commission (Planning Commission) recommended preliminary approval of Applicant's Plan and conditional use application. A hearing on the conditional use application ensued before the Supervisors.

After the hearing, the Supervisors granted Applicant's conditional use application subject to three attached conditions. In their decision granting Applicant's conditional use application, the Supervisors explained that the zoning ordinance authorizes the Supervisors to allow "patio home" dwellings in the R-3 district by conditional use upon compliance with the specific requirements in Section 84-74 of the zoning ordinance, and the general requirements applicable to all conditional uses found in Section 84-137 of the zoning ordinance. The Supervisors determined Applicant satisfied all of the specific and general conditional use criteria.

---

[3] A "patio home" is: "A single-family dwelling, which includes a master bedroom suite on the first (ground) floor, along with the cooking, eating, and living areas. Patio homes shall have an attached garage of sufficient size for two vehicles." Section 84-10 of the zoning ordinance.

[4] Single-family homes are permitted by right in the R-3 district.

The Supervisors also found that Applicant requested waivers from three requirements. Specifically, Applicant sought waivers from: (1) Section 48-18(A) of the excavation and fill ordinance (relating to "Filling standards"); (2) Section 78-39(K) of the SALDO (relating to requirements for streets); and, (3) Section 84-124(A)(1) of the zoning ordinance ("Steep slope controls").

The Supervisors determined Applicant was entitled to waivers from each of these three provisions, and they made corresponding findings supporting the grant of each waiver request. As detailed more fully below, the Supervisors found Applicant's requested waivers were justified by the physical conditions of the subject property, which were of sufficient character or uniqueness to support the requested waivers. Further, the Supervisors explained that the grant of the requested waivers was subject to certain attached conditions.

The Supervisors stated that, pursuant to Sections 84-137(C)(1) and (D)(4)(a) of the zoning ordinance, they could condition the grant of a conditional use application on such other conditions as they deemed necessary to implement the purposes of the zoning ordinance. Here, the Supervisors found Applicant proposed to effectively mitigate any potential unnecessary environmental disruptions attendant to the proposed use on the subject property through the specifications contained in the application, and any such disruptions would be minimized and controlled by other state, county, and local regulations that applied to the proposed development.

The Supervisors attached the following three conditions to the grant of the conditional use: (1) Applicant's strict compliance with all of the development/design specifications contained in the development plans submitted in conjunction with the application and with Applicant's associated application for subdivision and land development approval; (2) Applicant's adherence to the proposed additional stormwater management measures set forth in detail in Applicant's engineer's correspondence; and, (3) Applicant's acceptance of, and strict ongoing compliance with, all conditions the Township imposed in its approval of Applicant's separate application for subdivision and land development.

Based on these determinations, the Supervisors concluded Applicant satisfied all applicable standards relating to the requested conditional use. Thus, they granted conditional use approval for Applicant's proposed patio home dwellings on the subject property subject to the attached conditions.

On the same date that they granted Applicant's conditional use application, the Supervisors granted preliminary approval of Applicant's Plan. Objectors appealed both the grant of the conditional use and the preliminary Plan approval to the trial court.

Thereafter, the Planning Commission recommended final approval of Phase I of the Plan. Ultimately, the Supervisors granted final approval of Phase I of the Plan, subject to six conditions. Objectors appealed the Supervisors' grant of final Plan approval of Phase I of the Plan to the trial court. The trial court consolidated Objectors' appeals.

Ultimately, without taking additional evidence, the trial court affirmed the Supervisors' grant of conditional use and preliminary and final land development approval as well as the grant of the requested waivers. This appeal by Objectors followed.

## II. Issues

On appeal,[5] Objectors argue the Supervisors erred in granting Applicant's requests for conditional use and preliminary and final land development approval where: (1) the modification to waive the prohibition on the disturbance of steep slopes greater than 40% was never presented to the Planning Commission or approved by the Pine Township Engineer (Township Engineer) as required by the zoning ordinance; and, (2) the modification to waive the SALDO's restrictions that no more than 3 dwelling units may be served by a private street and that private street right-of-ways may not be less than 50-feet in width, which has the effect of increasing the stormwater runoff, and which was granted solely for aesthetic reasons, was improper.

## III. Discussion
### A. Waiver from Zoning Ordinance's Steep Slope Restrictions
#### 1. Contentions

---

[5] Generally, where the trial court takes no additional evidence, appellate review in a land development appeal is limited to determining whether the local governing body committed an error of law or an abuse of discretion. In re Appeal of AMA/Am. Mktg. Ass'n, Inc., 142 A.3d 923 (Pa. Cmwlth. 2016).

In addition, where, as here, the trial court did not take additional evidence, our review is limited to determining whether the Supervisors abused their discretion or committed an error of law in granting the conditional use application. Id.

Objectors first argue that the Supervisors' grant of the waiver permitting 1.9 acres of steep slopes in excess of 40% to be disturbed, where <u>no</u> disturbance is permitted, contains both procedural and substantive defects. First, Objectors assert, Section 78-53(B)(3)(c) of the SALDO requires that any modification or waiver request first be presented to the Planning Commission. They contend this did not occur here. Additionally, Objectors argue, the SALDO requires any waiver of this restriction receive approval by the Township Engineer, and the Township Engineer did not approve the request here. Further, Objectors maintain, the Supervisors erred in finding that a disturbance of 1.9 acres of steep slopes is *de minimis*.

Objectors argue that the Planning Commission meetings here occurred in April and May 2016. They assert the Township received the request for modification to disturb slopes in excess of 40% in late-June 2016. Objectors contend this eleventh hour modification request to disturb 1.9 acres of slopes that exceed 40%, was never reviewed by the Planning Commission, as required by the SALDO. Consequently, they maintain there was no recommendation entered into the official record of the Supervisors' meeting for this significant modification request. Objectors argue that Section 78-53(B)(3) of the SALDO states that any request for a modification shall be submitted, in writing, by an applicant as part of the application for preliminary subdivision approval. They contend the preliminary subdivision application here contained no request for modification of the zoning ordinance provision prohibiting disturbance of steep slopes that are greater than 40%.

7

In addition, Objectors argue Applicant failed to satisfy the prerequisite of Section 84-124(A)(3) of the zoning ordinance, which states: "This provision, <u>if acceptable to the Township Engineer</u>, may be waived if such slope is found to be a localized, isolated slope condition that is not environmentally sensitive or unstable (such as a previous man-made earth fill condition) and/or is necessary for installation of utility lines." <u>Id.</u> (emphasis added). Objectors contend that, in his initial report, the Township Engineer noted that Applicant's Plan did not have a tabulation of the existing steep slope areas to be disturbed. Reproduced Record (R.R.) at 38a. When Applicant revised its site grading plan (drawing C-400), Objectors assert, the Township Engineer's review letter noted that the proposed Plan disturbs 37% of the slopes that are greater than 40%. R.R. at 45a. Objectors maintain this was the standing comment letter that was brought to the Supervisors' attention at the June 2016 hearing.

Objectors argue that after the June 2016 hearing when Applicant submitted its tardy waiver request to disturb the steep slopes in excess of 40%, the Township Engineer in his July 2016 comment letter stated only that Applicant requested a waiver of the requirement. R.R. at 51a. Objectors contend that at no time did the Township Engineer state that the disturbance of 37% of the slopes on the subject property which were greater than 40% should be permitted. Additionally, Objectors assert, as is clear from Applicant's site grading plan, the area is not localized and cannot be characterized as *de minimis*, particularly where it is such a large percentage of the steep slopes on the 85-acre subject property as well as a 1.9 total acre disturbance area. Objectors also argue the site grading plan shows these

8

disturbances are needed solely to increase the number of lots in the Plan, in order to economically benefit Applicant.

Objectors assert the subject property has two large relatively level areas, which, at the time of the application, were cornfields. Because a significant portion of the subject property can be reasonably used to develop buildable lots, Objectors argue, Applicant has a reasonable use of the subject property and is not entitled to hardship relief to ignore the zoning ordinance's steep slope protections. See Boyer v. Zoning Hearing Bd. of Franklin Twp., 987 A.2d 219 (Pa. Cmwlth. 2010) (upholding denial of steep slope variance for construction of single-family home where property was currently used for harvesting, sawing, and selling timber); Zappala Grp., Inc. v. Zoning Hearing Bd. of Twp. of McCandless, 810 A.2d 708 (Pa. Cmwlth. 2002) (denying variance from steep slope regulation where developer could develop part of the land unconstrained by prohibited steep slopes without requested relief).

Objectors further maintain the Supervisors erroneously concluded the disturbance of 1.9 acres of steep slopes was *de minimis*. They assert the rule of *de minimis* variances is a narrow exception that only applies in limited situations, where the proposed dimensional deviation from a requirement is relatively minor, and where insistence on rigid compliance is not absolutely necessary to preserve the public policy to be obtained. E. Allegheny Cmty. Council v. Zoning Bd. of Adjustment of City of Pittsburgh, 563 A.2d 945 (Pa. Cmwlth. 1989); see Kensington S. Neighborhood Advisory Council v. Zoning Bd. of Adjustment of Phila., 471 A.2d 1317 (Pa. Cmwlth. 1984).

9

Applicant responds that Section 512.1(a) of the Pennsylvania Municipalities Planning Code (MPC)[6] authorizes the grant of waivers from a municipality's SALDO. It argues Pennsylvania law is well-settled that a waiver is proper where a development offers a substantial equivalent to a subdivision requirement, where an additional requirement would offer little or no added benefit, and where literal enforcement of the requirement would frustrate the effect of improvements. Monroe Meadows Hous. P'ship, LP v. Municipality of Monroeville, 926 A.2d 548 (Pa. Cmwlth. 2007); see also Levin v. Twp. of Radnor, 681 A.2d 860 (Pa. Cmwlth. 1996). Applicant asserts the grant of a waiver is within the Supervisors' discretion. Section 512.1(a) of the MPC.

Applicant maintains its requested waiver from the zoning ordinance's steep slope restriction, and the Supervisors' corresponding finding granting the waiver, is set forth in Finding of Fact No. 5(c). R.R. at 78a. First and foremost, Applicant argues, the Supervisors found this requested waiver was *de minimis*. Applicant asserts it submitted the appropriate geotechnical engineering reports establishing that such disturbances: will not impact environmentally sensitive or unstable slopes; pose no threat to adjacent properties; and, with the use of proper compaction and keyways, constitute grading that is feasible and safe. Applicant contends the Township Engineer reviewed and approved this submission.

Contrary to Objectors' unsupported claims that this waiver is unsafe and will severely impact the surrounding neighborhood, Applicant argues, it submitted engineering reports that state the opposite, and the Township Engineer

---

[6] Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, 53 P.S. §10512.1.

10

reviewed those reports and approved the waiver. In fact, Applicant maintains, Objectors did not submit a single expert report that would support their claims. Additionally, Applicant argues, if it were to strictly adhere to the steep slope restriction, such adherence would offer little or no added benefit, and would actually result in greater land disturbance. It contends strict compliance with this requirement would frustrate the effects of improvements. Therefore, Applicant asserts, the grant of the requested waiver positively impacts the area by disturbing the least amount of land possible. As a result, Applicant argues, the Supervisors properly granted this waiver under the standards established by Pennsylvania law.

Further, Applicant maintains, the Township Engineer described Applicant's plan to disturb 37% of slopes greater than 40% in its May 2016 review letter. R.R. at 45a. Applicant asserts the Planning Commission's recommendation issued shortly thereafter, R.R. at 60a-65a, pursuant to Applicant's preliminary Plan, recommended approval with the condition that Applicant comply with the Township Engineer's May 2016 review letter that details Applicant's proposal to disturb 37% of the slopes greater than 40%. R.R. at 64a.

Applicant argues that Objectors' assertion that the Township Engineer and Objectors were not aware of Applicant's waiver request prior to June 28, 2016 is untrue as evidenced by the May 2016 review letter. R.R. at 44a-49a. Applicant maintains the Planning Commission's recommended approval was conditioned on compliance with the Township Engineer's review letter that details this request. Applicant argues that the Township Engineer stated: "The [zoning ordinance] requires that slopes greater than 40% not be disturbed. Status: The plan proposes to

11

disturb 37% of slopes greater than 40%." R.R. at 45a. Applicant contends it unequivocally presented this request to the Planning Commission as detailed in the Township Engineer's review letter upon which the Planning Commission conditioned approval. Applicant asserts Objectors' argument that this request was "tardy" or made at the eleventh hour is not supported by the record or the Township Engineer's May 2016 review letter.

Finally, Applicant asserts, even if this Court does not find that the requested waivers were presented to the Planning Commission in May 2016, Applicant presented all three waiver requests to the Planning Commission again during the final approval process of Phase I of the Plan in December 2016 and January 2017. It asserts the preliminary Plan was submitted to the Planning Commission, and approved by the Supervisors on July 5, 2016. R.R. at 5a-9a. Applicant contends it then submitted the final Plan for Phase 1 to the Planning Commission, together with all three modification requests. Applicant argues the Planning Commission recommended final approval of these items, R.R. at 130a, and the Supervisors again approved them. R.R. at 116a.

Applicant argues that under the SALDO, modification requests can be presented to the Planning Commission as part of any preliminary *or* final application, and Applicant complied with that provision when it submitted its final Plan for Phase I of the proposed development. It asserts the Township Engineer detailed this modification request in its December 2016 review letter pursuant to Applicant's application for final subdivision approval of Phase I of its Plan. R.R. at 118a. Again, Applicant contends, Objectors' assertion that Applicant did not present

12

this request to the Township Engineer and the Planning Commission upon final approval of Phase I of the Plan is incorrect and not supported by any record evidence.

Through their reply brief, Objectors again assert the requested modification to waive the prohibition of disturbance of 1.9 acres of steep slopes that are greater than 40% was never presented to the Planning Commission or approved by the Township Engineer, as required. Objectors argue the Planning Commission meetings on the preliminary Plan occurred in April and May 2016. R.R. at 55a-59a, 60a-65a. They assert the Township received the request for modification to disturb slopes greater than 40% on June 28, 2016. R.R. at 92a. Thus, Objectors contend, at the time of the Planning Commission's vote on the preliminary Plan in May 2016, no waiver requests from the steep slope restrictions were lodged with the application. In fact, Objectors maintain, the Planning Commission's recommendation at that time was that Applicant comply with the Township Engineer's May 2016 review letter. R.R. at 64a. Objectors argue the May 2016 review letter stated that the zoning ordinance prohibits steep slopes greater than 40% from being disturbed, and the Plan proposed to disturb 37% of the slopes greater than 40%. R.R. at 45a. Objectors assert this makes it clear that the Plan as submitted at that time did not comply with the zoning ordinance regarding disturbance of steep slopes greater than 40%.

Objectors contend that Applicant attempts to mischaracterize the Township Engineer's statement that the Plan was not in compliance with the zoning ordinance, as a modification request.

13

Objectors also reiterate that the SALDO requires that an applicant submit any request for a modification in writing as part of the application for preliminary subdivision approval. Here, Objectors contend, the application for preliminary approval contained no request for modification of the restriction prohibiting disturbance of steep slopes greater than 40%. Objectors argue that on June 28, 2016, Applicant submitted a request for a waiver to disturb 37% of the slopes greater than 40%, where none is permitted. They assert the Supervisors granted this request four business days later, on July 5, 2016.

In addition, Objectors contend, the request for modification was not presented to the Planning Commission for final approval of Phase I of the Plan. Objectors argue that when Applicant filed its application for final approval of Phase I, the plans submitted stated that waivers were already granted. They assert the application for Phase I final Plan approval, filed in November 2016, contained no request for modifications. R.R. at 116a. Objectors contend the Township Engineer in its December 1, 2016 review letter of the final Plan for Phase I, noted that while the zoning ordinance required that slopes greater than 40% not be disturbed: "A waiver of this requirement was approved at the time of preliminary approval." R.R. at 118a. Again in the January 2017 Township Engineer's review letter, Objectors argue, it was restated that "the [zoning ordinance] requires that slopes greater than 40% not be disturbed …. A waiver of this requirement was approved at the time of preliminary approval." R.R. at 123a.

Objectors further contend that, at the Planning Commission meeting in January 2017, when an attempt was made to discuss the requested waivers,

14

Applicant's counsel convinced the Planning Commission that the waivers were subject to litigation. R.R. at 128a. Objectors argue that at that meeting the Supervisors, when considering final approval for Phase I of the Plan, conclusively stated "the waivers were granted previously and are covered in the appeal." R.R. at 131a. Contrary to Applicant's assertions, Objectors assert, during the final approval stage for Phase I of the Plan, the request to waive the zoning ordinance's prohibition of disturbing steep slopes greater than 40%, was never vetted before the Planning Commission.[7]

## 2. Analysis

As to the grant of modifications or waivers generally, Section 512.1 of the MPC, cited by the parties, states:

> (a) The governing body or the planning agency, if authorized to approve applications within the subdivision and land development ordinance, may grant a modification of the requirements of one or more provisions if the literal enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification will not be contrary to the public interest and that the purpose and intent of the ordinance is observed.
>
> (b) All requests for a modification shall be in writing and shall accompany and be a part of the application for development. The request shall state in full the grounds and facts of unreasonableness or hardship on which the request is based, the provision or provisions of the ordinance involved and the minimum modification necessary.

---

[7] The Supervisors did not file a brief with this Court.

15

(c) If approval power is reserved by the governing body, the request for modification may be referred to the planning agency for advisory comments.

(d) The governing body or the planning agency, as the case may be, shall keep a written record of all action on all requests for modifications.

Applying this statutory provision is problematic here with regard to Applicant's requested modification of *the zoning ordinance's* steep slope regulations because Section 512.1 of the MPC relates to modifications of *SALDO requirements*. Likewise, Objectors' reliance on Section 78-53(B) *of the SALDO's* procedural requirements for the granting of modifications or waivers is misplaced as the steep slope regulations are set forth *in the zoning ordinance*.[8]

To that end, Section 84-124 *of the zoning ordinance* sets forth the steep slope controls, and it includes a "self-contained" waiver provision from its restrictions on the disturbance of steep slopes. More particularly, Section 84-124 states, in pertinent part (with emphasis added):

Any portion of any lot or tract that has a natural slope or finished slope after grading in excess of 25% shall be considered a steep slope area and shall be subject to the following regulations.

**A.** Slopes in excess of 40%.

**(1)** Slopes in excess of 40% shall not be disturbed by grading, construction, or removal of vegetation,

---

[8] Indeed, that provision authorizes the Supervisors to "grant modifications to any of the requirements of this chapter …." Section 78-53(B) of the SALDO (emphasis added). The SALDO is set forth in Chapter 78 of the Township Code, while the zoning ordinance is set forth in Chapter 84 of the Township Code.

16

other than the removal of dead or diseased trees or other vegetation.

**(2)** All applications shall be accompanied by a certification from a registered civil engineer that slopes in excess of 40% shall not be disturbed in accordance with this subsection.

**(3)** This provision, if acceptable to the Township Engineer, may be waived if such slope is found to be a localized, isolated slope condition that is not environmentally sensitive or unstable (such as a previous man-made earth fill condition) and/or is necessary for installation of utility lines.

Section 84-124(A)(1)-(3) of the zoning ordinance.

Here, in granting a waiver from Section 84-124(A)(1), the Supervisors stated:

c.) Requested Waiver of Section 84-124(A)(1) of the Code. The proposed development (as stated in Applicant's supplemental waiver request of June 15, 2016) shall include limited disturbances of certain slopes in excess of 40%.

**Finding: A grant of this requested waiver is warranted due to the *de minimis* nature and isolated locations of the disturbances. In addition, Applicant submitted an appropriate geotechnical engineering report which establishes that such disturbances: will not impact environmentally sensitive or unstable slopes; pose no threat to adjacent properties; and, with the use of proper compaction and keyways, constitute grading which is feasible and safe. Under such circumstances a waiver, in accordance with that allowable by the provisions of Section 84-124(A)(B) [sic], is appropriate (with the concurrence of the Township's Engineer).**

17

Pine Twp. Bd. of Supervisors' Dec., 7/5/16, Finding of Fact (F.F.) No. 5(c).

Contrary to the Supervisors' finding and the arguments advanced by Applicant, our review of the record here does *not* reveal that the Township Engineer deemed a waiver of the zoning ordinance's steep slope regulations acceptable as required by Section 84-124(A)(3) of the zoning ordinance. To that end, *Applicant did not seek a waiver of the steep slope restriction until after the close of the public hearing on Applicant's conditional use application* and shortly before the Supervisors' grant of Applicant's request for conditional use approval. R.R. at 92a.

In addition, in its initial review letter in April 2016, the Township Engineer stated:

> The [zoning] [o]rdinance requires that slopes greater than 40% not be disturbed. (Section 84-124.A.(1).) **Status: <u>A plan and tabulation of existing steep slope areas and their disturbed areas has not been provided.</u>**

R.R. at 38a (emphasis by underline added).

Thereafter, the Township Engineer issued a second review letter in May 2016, which stated:

> The [zoning] [o]rdinance requires that slopes greater than 40% not be disturbed. (Section 84-124.A.(1).) **Previous Comment:** *A plan and tabulation of existing steep slope areas and their disturbed areas has not been provided.* **Status: <u>The plan proposes to disturb 37% of slopes greater than 40%.</u>**

R.R. at 45a (emphasis by underline added). While Applicant relies on this statement in support of its argument that the Township Engineer deemed a waiver of the zoning

18

ordinance's steep slope regulations acceptable as required by Section 84-124(A)(3) of the zoning ordinance, there are two flaws in this argument. First, the above-quoted comment does not state that the Township Engineer deemed a waiver of the steep slope regulations acceptable. Additionally, and more importantly, the above-quoted comment was made *more than a month before Applicant submitted its request for a waiver of the zoning ordinance's steep slope regulations*. See R.R. at 92a. Therefore, this comment by the Township Engineer cannot be construed as an approval of the as-yet nonexistent waiver request for the disturbance of steep slopes.

Further, in a letter dated the same day as the Supervisors' grant of Applicant's conditional use application, the Township Engineer issued a review letter that stated:

> The [zoning] [o]rdinance requires that slopes greater than 40% not be disturbed. (Section 84-124.A.(1).) **Previous Comment:** A plan and tabulation of existing steep slope areas and their disturbed areas has not been provided. **Previous Comment:** The plan proposes to disturb 37% of slopes greater than 40%. **Status: <u>The applicant has requested a waiver of this requirement.</u>**

R.R. at 51a (emphasis by underline added). While the Township Engineer's review letter states that Applicant requested a waiver of the steep slope restriction in Section 84-124(A)(1) of the zoning ordinance, there is no indication that the Township Engineer deemed this waiver acceptable as required by Section 84-124(A)(3) of the zoning ordinance.

Months thereafter, in its review of Phase I of Applicant's final Plan, the Township Engineer stated:

19

The [zoning] [o]rdinance requires that slopes greater than 40% not be disturbed. (Section 84-124.A.(1).) **Previous Comment:** A plan and tabulation of existing steep slope areas and their disturbed areas has not been provided. **Previous Comment:** The plan proposes to disturb 37% of slopes greater than 40%. **Status: A waiver of this requirement was approved at the time of preliminary approval.**

R.R. at 118a. Despite this statement, and as detailed above, there is no indication that the Township Engineer previously deemed Applicant's requested waiver from the zoning ordinance's steep slope restriction acceptable. Under these circumstances, the Supervisors erred in granting Applicant's request for a waiver from the zoning ordinance's steep slope restrictions.

Nevertheless, Applicant asserts that the Township Engineer approved its geotechnical report prior to the Supervisors' grant of the requested waiver from Section 84-124(A)(1) of the zoning ordinance's steep slopes restrictions. Applicant offers no record citation in support of this assertion. Moreover, our careful review of the record, including the minutes of the Supervisors' hearing on Applicant's conditional use application and the Township Engineer's review letters issued prior to, and the same day as, the Supervisors' grant of the requested waiver from the steep slopes restriction set forth in Section 84-124(A)(1) of the zoning ordinance, does not disclose support for this assertion.

Further, the certified record contains a *Supplemental* Geotechnical Exploration Report, dated September 22, 2016, more than two months *after* the

20

Supervisors approved Applicant's request for a waiver from the steep slope restrictions set forth in Section 84-124(A)(1) of the zoning ordinance.[9]

## B. Waiver of SALDO's Private Street Requirements
### 1. Contentions

Objectors next argue that the trial court erred in not reversing the Supervisors' grant of Applicant's request to waive the SALDO's requirements that no more than 3 dwelling units be served by a private street, and that private street right-of-ways may not be less than 50 feet in width, where the requested modification will increase stormwater runoff and was granted solely for aesthetic reasons. See Section 78-39(K) of the SALDO.

Objectors acknowledge that the MPC permits a local governing body to grant waivers from SALDO requirements where literal enforcement would exact undue hardship because of peculiar conditions pertaining to the land at issue. Objectors contend such waivers cannot be contrary to the public interest. Objectors argue that this Court characterizes waivers under Section 512.1 of the MPC as variances. DeFilippo v. Cranberry Twp. Bd. of Supervisors, 49 A.3d 939 (Pa. Cmwlth. 2012).

---

[9] Also, this Supplemental Geotechnical Exploration Report states that the results of a preliminary geotechnical exploration were submitted in February 2016. However, the results of this prior, preliminary geotechnical exploration, which apparently was conducted several months prior to Applicant's request for a waiver from the steep slope restrictions set forth in Section 84-124(A)(1) of the zoning ordinance, are not of record. Further, there is no indication that the Township Engineer approved those results prior to the Supervisors' grant of the requested waiver from the steep slopes restriction set forth in Section 84-124(A)(1) of the zoning ordinance.

21

Objectors maintain the reasons Applicant set forth in its application for having two private streets serving more than 3 lots that are only 30 feet in right-of-way width was to create a more "visible dynamic" as residents and visitors circulate through the community. R.R. at 7a. Further, at the Supervisors' June 2016 meeting, Objectors argue, Applicant's representative stated that the private streets will allow all of the homes to be placed in a more "attractive pattern." R.R. at 67a. Essentially, Objectors argue, the stated reason for laying out streets that are 40% narrower than required, was purely aesthetic, despite the fact that the standard street width requirements take into account safety considerations such as emergency vehicle access. With the stated reasons for these waivers as aesthetic purposes only, Objectors contend, the Supervisors erroneously concluded this rose to the level of undue hardship.

Objectors also maintain that, at the time of the application, the subject property consisted of two large cornfields. Because Applicant is essentially creating the subdivision on a blank canvas, Objectors argue, the widths of streets could not be an issue caused by the subject property's physical characteristics. Rather, this is a self-imposed hardship.

Objectors further assert our courts consistently hold that aesthetic concerns do not amount to the requisite hardship. Goldstein v. Zoning Hearing Bd. of L. Merion Twp., 19 A.3d 565 (Pa. Cmwlth. 2011). Thus, they contend, choosing not to provide 50-foot wide streets as required by the SALDO for aesthetic reasons, is not the hardship necessary for granting any divergence. Catholic Soc. Servs. Hous.

Corp. v. Zoning Hearing Bd. of Edwardsville Borough, 18 A.3d 404 (Pa. Cmwlth. 2011).

Applicant counters that its requested waiver regarding private streets, and the Supervisors' corresponding determination, is set forth in Finding of Fact No. 5(b). Applicant asserts the Supervisors found that the requested waiver would allow for a more visually pleasing effect and overall site design. Additionally, Applicant contends, by granting the waiver, the roads will remain private roads; therefore, maintenance of the roads will not be a municipal expense. Applicant maintains that the Supervisors also determined this waiver was highly beneficial to the planned development because it allows for driveways and garages to be located in the rear of the dwellings, and, as such, promotes a walkable, sidewalk-enhanced community without having to provide for the impact of driveway cuts. Id.

Moreover, Applicant argues, contrary to Objectors' assertions, the Supervisors' finding was not based on purely aesthetic reasons, but rather the overall function and utility of the development in light of accepted standards in the Township. Based on the Supervisors' finding, Applicant contends, literal enforcement of the street width requirement would be more detrimental than beneficial to the overall planned development, harming both the visual effect of the Plan and the walkable sidewalks. Applicant asserts its strict adherence to this requirement would offer no benefit if enforced and would frustrate the effects of improvements. Therefore, Applicant argues, this waiver was appropriately granted under the standards established by Pennsylvania law.

## 2. Analysis

As to the Supervisors' grant of Applicant's requests for waivers from Section 78-39(K) of the SALDO, that provision states (with emphasis added):

> **K**. Every lot shall abut on at least one public street, as such is defined in this chapter, but not only on a service street; provided, however, that <u>not more than three dwelling units may be served by a private street</u> (as defined in § 78-9 of this chapter) <u>of not less than 50 feet in width</u>, provided that a modification is granted in accordance with the procedures of § 78-53B of this chapter. In addition to the requirements and conditions stated [in] this chapter, the governing body may impose such additional requirements upon the allowance of a private street as such a modification to the terms of this chapter, including but not limited to the following:
>
> **(1)** Partial or full compliance with any or all the requirements, standards or conditions for the approval of public roads, as set forth in this chapter, Township Ordinance No. 116 and all other Pennsylvania and Township laws, ordinances and regulations, now and as amended in the future, including but not limited to design, construction and maintenance standards and performance and maintenance bond requirements.
>
> **(2)** The execution of a formal agreement by the developer, approved by the Township Solicitor, whereby the developer agrees to the nondelegable duty of perpetual maintenance of the private road.

Further, with regard to waivers or modifications from SALDO requirements, as set forth above, Section 512.1(a) of the MPC states (with emphasis added):

> (a) The governing body … may grant a modification of the requirements of one or more provisions <u>if the literal enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification will not be contrary to the public</u>

24

interest and that the purpose and intent of the ordinance is observed.

In addition, Section 78-53 of the SALDO states, in relevant part (with emphasis added):

**B.** Waivers and modifications. The [Supervisors] shall have the authority to grant modifications to any of the requirements of this chapter, provided that the following procedures and requirements are met. …

**(1)** Modifications in cases of physical hardship. In any particular case where the applicant can show by plan and written statement that, by reason of topographic or other physical conditions, the literal enforcement of any requirement of this chapter would exact undue hardship because of peculiar conditions pertaining to the land in question, the [Supervisors] may modify such requirements to the extent deemed just and proper, so as to relieve such hardship, provided that such modification will not be contrary to the public interest and that the intent and purpose of this chapter is observed.

**(2)** Modifications to allow equal or better specifications. When an equal or better specification is available to comply with the Township improvement specifications or design standards of this chapter, the [Supervisors] may make such reasonable modifications to such requirements of this chapter to allow the use of the equal or better specification, upon recommendation of the Township Engineer. In approving such modification, the [Supervisors] may attach any reasonable conditions, which may be necessary to assure adequate public improvements and protect the public safety.

**(3)** Procedures for authorizing modifications.

25

**(a)** Any request for a modification to this chapter authorized by this section shall be submitted, in writing, by the applicant as part of the application of a preliminary or final application, stating the specific requirements of this chapter which are proposed to be modified, the grounds and facts of unreasonableness or hardship on which the request is based and the minimum modification deemed necessary.

**(b)** The request for a modification to this chapter shall be considered by the [Supervisors] at a public meeting. The [Supervisors] may hold a public hearing pursuant to public notice prior to making a decision on the request for a modification.

**(c)** Requests for modifications shall be first reviewed by the Planning Commission. The Planning Commission recommendation shall be entered into the official record of the [Supervisors'] meeting.

**(d)** The [Supervisors] shall keep a written record of all actions on all requests for modification and the reasons relied upon by the [Supervisors] in approving or disapproving the request for a modification shall be entered into the minutes of the meeting. Any decision, resolution, or ordinance adopted governing an application, which contains a request for a modification shall include reference to the modification and the reasons for approval or disapproval.

Here, in granting Applicant's requested waivers from Section 78-39(K) of the SALDO, the Supervisors stated:

b.) Requested Waivers of Chapter 84's incorporated provisions of Section 78-39 (K) of the [SALDO]. The

26

proposed development shall include construction of two (2) private streets (Elm Road and Birch Road) which shall each have a width of right-of-way of thirty (30') feet (less than the otherwise required fifty (50') feet) and which shall each serve more than the otherwise permitted maximum of three (3) dwelling units.

**Finding: Grants of these two (2) requested waivers are warranted so as to allow for rotation of certain structures (to be perpendicular to Spruce Street) and to break apart the line of building facades and create a more pleasing visual effect in addition, the rotated structures gain frontage along a right-of-way as required by the [SALDO]. The overall effect of the requested waivers in these areas is supportive of: Imaginative, flexible site design; efficiency of the use of available space; limitation of overall site disturbance; and utilization of driveways and garages to be located in the rear of structures (thus promoting a walkable, sidewalk-enhanced community).**

F.F. No. 5(b).[10]

---

[10] The Supervisors' grant of the requested waivers from Section 78-39(K) of the SALDO, which the Planning Commission recommended approval of, R.R. at 64a, are based on a letter submitted to the Supervisors by Applicant's Engineer, which states (with emphasis added):

The Townships [sic] encourages imaginative site design. Accordingly, the zoning codes [sic] permits flexibility in building spacing and orientation. Therefore, [Applicant] has chosen to rotate some of the single family attached buildings to be perpendicular to Spruce Street. The intent of the design is to break apart the line of building facades that face Spruce Road thus creating more visual dynamic as residents and visitors circulate through the community. Since some of the buildings are perpendicular to the public right-of-way, lot frontage must be gained along a right-of-way other than Spruce Road to allow subdivision and sale of lots. Accordingly, [Applicant] has proposed two private streets (Elm Road & Birch Road) with a 30 foot right-of-way width. In addition, more than 3 units will be served by each private street. The design enables the rotated buildings to gain frontage along a right-of-way as required by code. The flexibility in building orientation and spacing enables a key development goal of the community to be realized. Development is concentrated in two relatively flat portions of the

27

Upon review, we conclude the Supervisors erred in granting the requested waivers from Section 78-39(K) of the SALDO. To that end, the Supervisors' finding, which granted Applicant's requested waivers from Section 78-39(K) does *not* clearly or specifically explain *how* waivers from the literal enforcement of that provision are necessary to prevent undue hardship based on the peculiar conditions of the subject property. F.F. No. 5(b); see Section 78-53(B)(1) of the SALDO. Indeed, in light of the fact that, prior to Applicant's proposed development, the subject property was unimproved, it is unclear why Applicant could not lay out its private streets in a manner that complies with Section 78-39(K) of the SALDO's requirements. As such, the Supervisors erred in determining that waivers from the literal enforcement of that provision were necessary to prevent undue hardship based on the peculiar conditions of the subject property. Further, the aesthetic concerns cited by the Supervisors do not constitute undue hardship. Goldstein; Hipwell Mfg. Co. v. Zoning Bd. of Adjustment of City of Pittsburgh, 452 A.2d 605 (Pa. Cmwlth. 1982).

---

site that are currently open fields. This design helps limit site disturbance and protect natural areas comprised of trees, waterways, and steep slopes primarily around the perimeter of the site. The smaller, private right-of-ways permit flexibility in design and gain efficiency in space so that the overall limit of disturbance is reduced. The private drives are looped so that emergency access vehicles and other services agencies (trash collection, snow removal, etc.) can easily maneuver unimpeded. Also, the private drives help ensure that the front facades of the buildings face the street and the driveways and garages are located in the rear of the buildings helping to emphasize and promote the idea of a walkable, sidewalk community. The private drives will be owned and maintained by the Home Owners Association.

Reproduced Record at 7a.

28

In addition, the Supervisors' finding does not explain how Applicant's proposed reduction in the required width of its proposed private streets and its proposed increase in the minimum number of dwellings served by those streets represents a modification that would permit equal or better specifications to comply with the Township's improvement specifications or the SALDO's design standards. See Section 78-53(B)(2) of the SALDO. Under these circumstances, the Supervisors erred in granting the requested waivers from Section 78-39(K) of the SALDO.[11]

## IV. Conclusion

Based on the foregoing, we reverse the decision of the trial court that affirmed the Supervisors' decisions granting Applicant's conditional use application and its applications and plans for preliminary and final subdivision and land development approval.[12]

---

[11] Although Objectors briefly note that the Supervisors also granted Applicant's requested waiver from Section 48-18(A) of the excavation and fill ordinance, see Appellant's Br. at 16, they offer no developed argument challenging the grant of this requested waiver. Therefore, we do not address the Supervisors' grant of the requested waiver from Section 48-18(A) of the excavation and fill ordinance.

[12] Based on our determinations that the Supervisors erred in granting the requested waivers from the zoning ordinance's steep slope restriction, and the SALDO's requirements regarding private streets, we need not address Objectors' arguments that the Supervisors erred in granting the requested waivers where the grant of the requested waivers would be detrimental to the public interest.

Nor do we address at length Objectors' argument that the lack of a stenographic transcript of the conditional use hearing results in an inadequate record for appellate review. It is sufficient for present purposes to note that where a board of supervisors is granted jurisdiction to adjudicate a matter under a zoning ordinance, such as a conditional use application, Section 908(7) of the MPC, 53 P.S. §10908(7), applies and requires a stenographic record. See Section 107(b) of the MPC, 53 P.S. §10107(b) (defining the term "Board").

_____
ROBERT SIMPSON, Judge

Senior Judge Leadbetter dissents.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lake MacLeod Homeowners, : 
Association, Inc., Jonathan Iams, : 
John and Sujata Donahue, AJ and : 
Deanna Jugan, Don and Alycia : 
Lamparski, Sherwood and Shawna : 
Johnson, Jim and Joyce Hensler, : 
Jason and Danielle Grilli, Gregory : 
and Lora Rich, Adan and Jodi Kanter, : 
Matthew Lydic, Sandeep and Shaifali : 
Sharma, Stephanie Novosel, Todd and : 
Donna White, Richard and Melinda :    No. 1247 C.D. 2017
Hoyland, Vince Lattari and Rebeccah : 
Hoffman, Neil and Nicole Walker, : 
Michael Duckworth and Tracy Howe, : 
Jeff and Allison Romano, Doug and : 
Diane Murray, : 
                  Appellants : 
                       : 
       v. : 
                       : 
Pine Township Board of Supervisors : 
Cavalier Land Partners, LP :

# **O R D E R**

    **AND NOW**, this 12th day of March, 2018, the order of the Court of Common Pleas of Allegheny County is **REVERSED**.

 

_____
ROBERT SIMPSON, Judge